UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE KUTLENIOS,      Case No. 07-15333

    Plaintiff,      HONORABLE SEAN F. COX
                                                               United States District Judge
v.

UNUMPROVIDENT CORPORATION,
et. al.,

    Defendants.
_____/

OPINION & ORDER

Plaintiff George Kutlenios ("Kutlenios") brings the instant civil action against Defendants UnumProvident Corporation and Provident Life and Accident Insurance Company (collectively, "Unum") for breach of contract, and against insurance agent Robert Correa ("Correa") for professional negligence arising out of Kutlenios's application for disability insurance with Unum.  The matter is currently before the Court on the parties' cross-motions for summary judgment [Doc. Nos. 37, 38, 69, & 72], as well as two procedural motions tangential to the summary judgment motions [Doc. Nos. 57 & 65].  The parties have fully briefed the issues, and a hearing was held on June 25, 2009.  For the reasons below, the Court **GRANTS** the Defendants' Motions for Summary Judgment [Doc. Nos. 37 & 38], **DENIES** Plaintiff's Motions for Summary Judgment [Doc. Nos. 69 & 72], and **DENIES AS MOOT** the tangential procedural motions [Doc. Nos. 57 & 75].

BACKGROUND

Kutlenios is the 55-year-old owner and operator of The Holly Hotel, a fine dining

1

restaurant located in Holly, Michigan.  Correa is an insurance agent, and has been selling life, health, disability, auto, homeowners, property/casualty, and commercial insurance in Michigan since 1959.  Correa has sold Kutlenios insurance related to Kutlenios's business for the past fifteen years.

Beginning in 2003, Kutlenios sought to supplement his existing disability insurance coverage.  On March 1, 2004, Kutlenios signed an application for disability income insurance which his agent, Correa, submitted to Unum.  Kutlenios attested on the application that he had "read the statements and answers recorded above," and that "they are true and complete and correctly recorded." [Unum's Ex. 1, Doc. No. 37, p. 5].  Kutlenios further attested that "I UNDERSTAND that if My answers on this application are incorrect or untrue, the Company may have the right to deny benefits or rescind by coverage."  *Id*.  Section two of that application, entitled "Medical Information," asked over 20 "yes" or "no" questions about Kutlenios's health, all of which were left unanswered.  *Id*. at p. 2.

When Unum received the application and discovered that Kutlenios had not answered any of the health questions in Section 2, Unum rejected the application and returned it to Correa on March 12, 2004 with instructions to fully complete Section 2 of the application.  The application was resubmitted to Unum with all of the health questions in Section 2 answered "no," except for Question 9, which was left unanswered.  Included within those questions to which Kutlenios answered "no" was Question 3, which asked if Kutlenios had ever:

> . . .been diagnosed by a member of the medical profession as having or treated for . . . injury, disease or disorder of the spine, neck, back, extremities, including muscles, bones, joints, amputations or any chronic painful condition, neuritis, neuralgia or neuropathy, sciatica, arthritis or gout?

[Unum's Ex. No. 5, Doc. No. 37, Question 3].

On April 15, 2004, Unum underwriter Charlotte LaRochelle ("LaRochelle") conducted a "phone history interview" ("PHI") with Kutlenios as part of the application process. During the PHI, LaRochelle asked Kutlenios questions regarding his health and generated a written report. Because Question 9 of Section 2 of the application was still blank, LaRochelle again asked Kutlenios the question, to which Kutlenios responded in the negative. [La Rochelle Dep., Unum's Ex. 6, Doc. No. 37, pp.26-27]. LaRochelle also asked Kutlenios whether he had, "in the last five years, seen any doctor or medical practitioner not otherwise listed on this application[.]" Other than another disclosure that Kutlenios had seen Dr. David Schwartz in connection with a prescription for cholesterol medication, Kutlenios answered "no" to that question by LaRochelle as well. *Id*. at pp. 29-30.

Based upon Kutlenios's application answers and statements in the PHI, Unum issued Kutlenios disability policy No. 06-600-7918649 ("the Policy"), with an effective date of May 20, 2004. The Policy was tendered by Unum to Correa, who gave it to Kutlenios. Like all policies for disability insurance in Michigan, the Policy contained a two-year "incontestability clause" which provided that after the Policy had been in effect for two years, Unum would be unable to deny a claim or rescind a policy based upon mistatements made in the application for any disability beginning two years after the Policy's effective date:

> After two years from the Effective Date of this Policy, no misstatements or omissions, except fraudulent misstatements or omissions, made by You in the application for this Policy will be used to void or Contest the Policy or to deny a claim *for loss incurred or Disability that starts after the end of such two year period*.

[Unum's Ex. 8, Doc. No. 37, p.17 (emphasis added)].

3

Two years and three weeks after the policy's effective date, on June 15, 2006, Kutlenios signed a claim for benefits under the Policy alleging he was disabled from his occupational duties because of a condition known as "ankylosing spondylitis" ("A/S"), a type of arthritis that causes vertebrae in the spine to fuse together.

Kutlenios's physician, Dr. David Schwartz, stated in Plaintiff's claim for benefits that the date of Kutlenios's first visit regarding A/S was April 9, 2003, *almost a full year before Kutlenios applied for the Policy*. After Unum received notice of this claim for benefits, additional medical information on Kutlenios's A/S came to light.

In October 1998, after complaining of neck pain to Dr. Panekej Vakharia, x-rays showed "marked narrowing of the L4-5 intravertebral disc," with "anterior atrophytes involving all the lumbar spine," which "could be secondary to D.I.S.H. or anklylosing spondylitis." [Unum's Ex. 11, Doc. No. 37].

On November 2, 1998, an evaluation by Dr. Jolanta Sobotka showed significantly limited range of motion in Kutlenios's neck, lumbrosacral spine and shoulders, noting that Kutlenios "had ankylosing spondylitis," and that Dr. Sobotka "discussed with him his condition, its complications and prognosis," and that she "also gave him a booklet on that to read." [Unum's Ex. 12, Doc. No. 37].

A December 5, 2000 x-ray showed excessive paraspinal ossification of Kutlenosis's thoracic spine "consistent with anklylosing spondylitis," [Unum's Ex. 13, Doc. No. 37], as did a May 23, 2001 report. [Unum's Ex. 14, Doc. No. 37]. A June 28, 2001 report noted "[d]iffuse ankylosing spondylitis with associated radiographic findings" that were "consistent with the patient's history of ankylosing spondylitis." [Unum's Ex. 15, Doc. No. 37]. A July 3, 2001

medical record contains a "[r]eport of spine x-ray [that] confirmed diffuse ankylosing spondylitis." [Unum's Ex. 16, Doc. No. 37].

Another report discovered by Unum after Kutlenios filed his disability claim indicates that Kutlenios may have had A/S far longer in advance than these other reports may indicate. A July 2, 2006 medical report from Dr. Dianne Trudell noted that Kuelenios had an "established diagnosis of ankylosing spondylitis" which "diagnosis was made 25 years ago." [Unum's Ex. 18, Doc. No. 37]. Kutlenios himself testified at deposition that he underwent a genetic examination in the 1980s which revealed a predisposition to developing A/S. [Kutlenios Dep., Correa's Ex. B, pp. 20-21].

After learning the above facts regarding Kutlenios's extensive medical history with, and diagnosis of, A/S prior to Kutlenios's application for the Policy, Unum confirmed with Kutlenios's agent, Correa, that the answers on Kutlenios's application were the answers that Kutlenios gave. Unum also had Kutlenios's underwriting file and medical history reviewed by Unum underwriter Rosemary Lano ("Lano"), who reported that had Unum known the true facts about Kutlenios's A/S during the Policy's application process, they would have not issued the policy:

> Q: So is it fair to say that based on your review of both the claim file and the underwriting file, had Unum had all of the information that it had as part of its claim process back when it was underwriting the policy, the policy would have been denied [?]
> A: Yes.

[Lano Dep., Correa's Ex. H, Doc. No. 38, p. 31].

On March 26, 2007, Unum sent Kutlenios a letter denying his claim for benefits, rescinding the Policy based upon his misstatements in the application regarding his medical

5

history of A/S, and tendering to him all premiums he paid on the Policy.

Kutlenios filed a complaint against Unum for benefits on December 13, 2007. Unum filed a counterclaim on January 31, 2008 [Doc. No. 7], seeking rescission of the Policy based on Kutlenios's fraud in the application process. Kutlenios filed an amended complaint [Doc. No. 14] on March 10, 2008, adding a claim against Correa for Correa's alleged professional negligence in the application process for Kutlenios's policy with Unum. All parties have filed cross-motions for summary judgment, with the relevant claims of each party outlined below.

In his Motion for Summary Judgment [Doc. No. 38], Correa argues that Kutlenios has failed to comply with the two-year statute of limitations for professional negligence claims in the state of Michigan. Correa also argues that, notwithstanding the statute of limitations issue, Correa's claim for professional negligence should be dismissed for failure to show Correa's alleged negligence was a cause in fact of Kutlenios's damages.[1]

In their Motion for Summary Judgment [Doc. No. 37], Unum argues that Kutlenios's claims should be dismissed, and their claim for rescission should be granted, due to Kutlenios's misstatements and omissions regarding his A/S diagnosis, and the resulting treatment for that diagnosis, in both the application and phone interview with Unum leading to Unum's grant of the policy. Unum also argues that Kutlenios's conduct in securing the Policy was fraudulent.

In his Motion for Summary Judgment against Correa [Doc. No. 72], Kutlenios argues Correa was motivated primarily out of financial self-interest - seeking Unum's high commissions

---

[1] Correa has also filed a "Motion to Strike the Affidavit of Caryn Montague" [Doc. No. 57], in which Correa argues Kutlenios's expert witness testimony regarding what Correa should have done in shopping disability policies for Kutlenios should be stricken from the record. As the Court **GRANTS** Correa's Motion for Summary Judgment [Doc. No. 38] and **DENIES** Kutlenios's cross-motion for summary judgment [Doc. No. 72], the Court **DENIES AS MOOT** the instant motion [Doc. No. 57].

for agents selling Unum policies - in steering Kutlenios toward a disability policy with Unum. This, Kutlenios argues, constituted negligence on Correa's part in the application process, and allowed Correa to take advantage of his ongoing business relationship with Kutlenios to Kutlenios's detriment.

In his Motion for Summary Judgment against Unum [Doc. No. 69], Kutlenios argues he is entitled to summary judgment against Unum based on the absence of evidence he committed fraud in the application process for the Policy with Unum.[2]

STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED.R.CIV.P. 56(e)).

---

[2] Kutlenios has also filed a "Motion For Leave to File Supplemental Responses to Defendants Correa and Unum's Factual Statements" [Doc. No. 65], arguing that his counsel inadvertently failed to respond to each and every fact alleged in the defendants' statements of facts not in dispute. As nothing included within Kutlenios's proposed responses demonstrates a genuine issue of material fact, the Court **DENIES AS MOOT** the instant motion [Doc. No. 65].

ANALYSIS

The Court **GRANTS** both motions for summary judgment by the Defendants: Correa's Motion for Summary Judgment [Doc. No. 38], and Unum's Motion for Summary Judgment [Doc. No. 37]. As such, the Court does not reach the arguments in Kutlenios's Motions for Summary Judgment [Doc. Nos. 69, 72], and **DENIES** them **AS MOOT** [Doc. Nos. 69, 72].

I. <u>Kutlenios's Claims Against Correa</u>.

In his Motion for Summary Judgment [Doc. No. 38], Correa argues that the Court should grant summary judgment in his favor for two reasons: 1) Kutlenios's claims are outside the statute of limitations period for professional negligence actions in the state of Michigan; and 2) Kutlenios's cannot show Correa's alleged negligence is a cause in fact of Kutlenios's alleged damages. The Court agrees with Correa with respect to the statute of limitations, and therefore does not reach the argument that Kutlenios cannot show Correa's alleged negligence is a cause in fact of Kutlenios's alleged damages.

Under Michigan law, the statute of limitations for negligence against a "member of a state licensed profession," is two years from when the claim accrues or six months from the date of discovery of the claim, whichever is longer. M.C.L. §§ 600.5838(1), (2). Michigan law considers insurance agents subject to this statutory provision. *See, e.g., Malburg v. Dagenais*, 2007 WL 1206955, *1 (Mich. Ct. App. April 24, 2007). Kutlenios cannot satisfy either of these time requirements.

With respect to the two year, "accrual," period, a claim for professional negligence accrues "at the time that person discontinues serving the plaintiff in a professional capacity or pseudo professional capacity *as to the matter out of which the claim for malpractice arose*."

M.C.L. § 600.5838(1) (emphasis added).

In this case, Kutlenios argues that he and Correa have a continuing relationship as insured and agent. [Pl.'s Br., Doc. No. 46, p.22]  Correa continues to sell insurance products to Kutlenios related to Kutlenios's business, as evidenced in Correa's deposition:

> Q: Isn't it true you've contacted George [Kutlenios] since this litigation has commenced?
> A: Oh, yeah, we've been in touch.  He is my client still, and we have a renewal on his commercial account in November; and I told him I was going to take a run at the account, but I wanted to make sure that we were still having a dialogue.

[Correa Dep., Pl.'s Ex. 1, Doc. No. 46, pp.171-72].  Kutlenios further argues that correspondence between Correa and Kutlenios, dated as late as October 15, 2007,[3] demonstrates that a business relationship lasted at least that long, meaning that Kutlenios would have until October 15, 2009 to have filed suit against Correa for negligence under the two year, "accrual" rule.

Correa's argument regarding the two-year, "accrual" rule is without merit.  Correa's claim for negligence alleges that Correa was negligent in the preparation of Kutlenios's application for disability insurance with Unum.  That process was completed on or about May 20, 2004, when Correa delivered the issued Unum policy to Kutlenios.  While Kutlenios may have enjoyed a continuing business relationship with Correa on other matters *separate from* the Unum disability policy, that interaction was not based on "the matter out of which the claim for malpractice arose" under M.C.L. § 600.5838(1).

The two-year statute of limitations began to run on Kutlenios's claim for negligence

---

[3] Kutlenios states in his brief in opposition [Doc. No. 46, p.23] that this letter is "Exhibit 30" to his brief.  Exhibit 30, however, is a letter from a handwriting expert to Kutlenios's counsel, not a letter from Correa to Kutlenios.

against Correa on May 20, 2004. Therefore, under the two-year statute of limitations, Kutlenios's claim became barred under M.C.L. § 600.5838(1) on May 20, 2006, almost two years before Kutlenios named Correa as a defendant on March 10, 2008.

With respect to the six month, "discovery" period, whether a plaintiff should have discovered a claim is tested objectively by application of the reasonable person standard. *Levinson v. Trotsky*, 199 Mich. App. 110, 112 (1993). A plaintiff discovers a claim if he or she has discovered a possible cause of action. *Gebhardt v. O'Rourke*, 444 Mich. 535, 544 (1994). The discovery rule requires that a plaintiff know of the act giving rise to the malpractice, and that the plaintiff had reason to believe that the act or omission was improper. A claim accrues once the plaintiff is aware of the injury and its possible cause. *Solowy v. Oakwood Hospital Corp.*, 454 Mich. 214, 222 (1997).

Kutlenios's brief in opposition to summary judgment [Doc. No. 46] makes no argument regarding the six-month, "discovery" period. Indeed, under *Solowy*'s "once the plaintiff is aware of the injury and its possible cause" standard, Kutlenios was on notice of his claim, at the very latest, when Unum rescinded his policy and returned his premium on March 26, 2007. Using this date as a benchmark, Kutlenios was almost six months *beyond* the six-month period under the "discovery" rule when he named Correa as a defendant on March 10, 2008.

For these reasons, the Court **GRANTS** Correa's Motion for Summary Judgment [Doc. No. 38], based upon Kutlenios's failure to comply with the statute of limitations periods in M.C.L. § 600.5838.

    II. <u>Kutlenios's Claims Against Unum</u>.

In their Motion for Summary Judgment [Doc. No. 37], Unum argues that the Court

should grant them summary judgment on Kutlenios's claims, and grant Unum's counterclaim for rescission of the Policy. Because Kutlenios made material misrepresentations or omissions in his application for insurance with Unum, the Court **GRANTS** Unum's motion [Doc. No. 37], and rescinds the Policy. In light of this outcome, the Court declines to reach Unum's alternate argument alleging fraud by Kutlenios.

Rescission of disability income insurance provisions is governed by M.C.L. § 500.2218. The Sixth Circuit succinctly summarized the requirements under that statutory section as follows:

> Michigan law permits rescission of an insurance policy when the insured makes a material misrepresentation in the application for insurance. A misrepresentation is material if the insurer would have charged a higher premium or not accepted the risk had it known the true facts.

*Old Life Ins. Co. of America v. Garcia*, 411 F.3d 605, 611 (6th Cir. 2005) (internal citations omitted). The policy application which Kutlenios filled out for Unum, like all other applications for disability insurance with Unum, provides for the following safeguard:

> After two years from the Effective Date of this Policy, no misstatements or omissions, except fraudulent misstatements or omissions, made by You in the application for this Policy will be used to void or Contest the Policy or to deny a claim *for loss incurred or Disability that starts after the end of such two year period*.

[Unum's Ex. 8, Doc. No. 37, p.17 (emphasis added)]. Thus, there are two types of misstatements or omissions discussed in Unum's above-quoted clause: 1) fraudulent misstatements or omissions, which Unum can always rely upon to void or contest the policy; and 2) misstatements or omissions that are not fraudulent, which Unum can only use to void or contest the policy if they are in relation to a loss beginning before the two-year anniversary of the policy. Kutlenios's misstatements and omissions on his Policy application, at the very least, fail the second of these

11

prongs.

Kutlenios's Policy was effective as of May 20, 2004. Thus, under the terms of the Policy, Unum was entitled to rescind the Policy based upon misstatements or omissions relevant to any disability commencing before the two year anniversary of that policy, May 14, 2006. Kutlenios himself claims he became disabled no later than March of 2006, within the two-year time period. Kutlenios's amended complaint alleges as follows:

> Despite this information/diagnosis [that his A/S was progressing], Mr. Kutlenios continued to work full time until March 2006, at which time he had slowed down, working 45+ hours per week as opposed to his usually 70+ hours per week.

[Pl.'s Amended Complaint, Doc. No. 14, ¶20]. Further, Kutlenios's physician, Dr. David Schwartz, stated in Kutlenios's claim for benefits that the "[d]ate of [his] first visit regarding [his] current condition" of A/S was on April 9, 2003, *before Kutlenios had even applied for disability insurance with Unum* [Unum's Ex. 10, Doc. No. 37]. Indeed, Kutlenios's medical records show that as early as his November 2, 1998 evaluation by Dr. Jolanta Sabotka, Kutlenios had been diagnosed with A/S. *Id*. at Ex. 12.

Kutlenios's omission of his A/S diagnosis from his Policy application entitles Unum to rescind the policy. Further, Kutlenios also made affirmative misstatements regarding his A/S in the April 15, 2004 telephone interview with an Unum representative. When asked Question 9 of Section 2 of the application ("Have you in the past five years seen any doctor or medical practitioner not otherwise listed on this application?"), Kutlenios answered in the negative. [LaRochelle Dep., Unum's Ex. 6, pp. 29-30]. In fact, Kutlenios's medical history shows that he consulted with numerous physicians and medical specialists within that five year period about his A/S.

In defense to this argument, Kutlenios only argues that he was not under a physician's care for his A/S "between March 1, 2006 and June 1, 2006," - the period of time in which Kutlenios applied for the Policy with Unum - and that "[t]he evidence demonstrates that Mr. Kutlenios did not knowingly, actively pursue AS treatment until July 2006." [Pl.'s Br., Doc. No. 46, p.4].

These arguments are insufficient to demonstrate a genuine issue of material fact regarding the two-year period issue. Indeed, Kutlenios's argument that he did not seek medical treatment for his A/S until July of 2006 is belied by his own medical records; Kutlenios had been receiving medical care, on a regular basis for his A/S from several doctors since 1998.

These false statements in the application process were material to Unum's underwriting, and there is no dispute that Unum would not have issued the same policy had it been informed of Kutlenios's actual health conditions. As Unum's underwriter, Ms. Lano, testified to at deposition:

> Q: So is it fair to say that based on your review of both the claim file and the underwriting file, had Unum had all of the information that it had as part of its claim process back when it was underwriting the policy, the policy would have been denied [?]
> A: Yes.

[Lano Dep., Correa's Ex. H, Doc. No. 38, p.34].

The Court therefore **GRANT**S Unum's Motion for Summary Judgment against Kutlenios [Doc. No. 37], and **RESCINDS** the Policy.

CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendants' Motions for Summary Judgment [Doc. Nos. 37 & 38], **DENIES** Plaintiff's Motions for Summary Judgment [Doc. Nos.

69 & 72], **GRANTS** Summary Judgment on Defendant Unum's Counterclaim [Doc. No. 7] seeking rescission of Policy No. 06-600-7918649, **DENIES AS MOOT** Defendant Robert Correa's Motion to Strike [Doc. No. 57], and **DENIES AS MOOT** Plaintiff George Kutlenios's Motion For Leave to File Supplemental Responses [Doc. No. 65].

    **IT IS SO ORDERED**.

                         s/Sean F. Cox
                         Sean F. Cox
                         United States District Judge

Dated:  June 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 29, 2009, by electronic and/or ordinary mail.

                         s/Jennifer Hernandez
                         Case Manager